IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-02202-CBS

SHANA AMAYA,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Shana Amaya's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated July 17, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. No. 23). The court has carefully considered the Complaint (filed August 16, 2013) (Doc. No. 1), Defendant's Answer (filed February 3, 2014) (Doc. No. 9), Plaintiff's Opening Brief (filed April 26, 2014) (Doc. No. 15), Defendant's Response Brief (filed June 18, 2014) (Doc. No. 18), the entire case file, the administrative record, and applicable case law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In March 2009, Plaintiff filed an application for disability benefits, alleging a disability onset date of May 25, 2008. (*See* Social Security Administrative Record (hereinafter "AR") at 47, 160-69). Plaintiff alleges she became disabled due to mental and physical impairments. (AR at 47). Plaintiff was born on September 26, 1966, and was 41 years old on the date of her alleged disability onset. (AR at 160). She has completed one year of college and has worked in a variety of jobs including tax preparer, housekeeper, cook, and desk clerk. (AR at 222, 231-42). After her initial application was denied, Plaintiff requested a hearing, which was held on March 23, 2011, before an Administrative Law Judge ("ALJ"). (AR at 113, 119).

Plaintiff represented herself at the hearing[1] and testified that she suffered from carpal tunnel syndrome in her right wrist as well as a tear in her rotator cuff, which made it difficult to reach, hold, write, or type with her right hand. (AR 77-78). She also reported episodes of dizziness and numbness, which sometimes resulted in her "pass[ing] out completely." (AR at 59). She estimated that she could stand for five minutes at a time, sit for 15 minutes at a time, and lift a gallon of milk. (AR at 56-57). Plaintiff testified that her typical day included getting her children ready for school as well as taking them to school, preparing soup or rice, making her bed, vacuuming, sweeping, reading, driving, grocery shopping, and attending church. (AR at 54-57). At the time of the hearing, Plaintiff was five feet and three inches tall, and weighed 317 pounds. (AR at 58). Finally, Plaintiff testified that, following an altercation with the police, she began suffering from depression, which prevented her from being around people.[2] (AR at 54).

Martin Rauer testified at the hearing as a vocational expert ("VE"). The VE testified that Plaintiff's prior work experience was classified as ranging from "sedentary" to "medium" by the

---

[1] The ALJ informed Plaintiff of her right to be represented by an attorney or a non-attorney representative. (AR at 41). Plaintiff chose to proceed without representation. (AR at 42).

[2] On appeal, Plaintiff does not take issue with the ALJ's evaluation of her mental impairments.

Dictionary of Occupational Titles exertional guidelines. (AR at 66-67). The ALJ asked the VE to assume hypothetically that a younger individual, with more than a high school education, and past work experience similar to Plaintiff had the following limitations: (1) lifting and carrying 10 pounds frequently, 20 pounds occasionally; (2) sitting for up to six hours out of an eight hour day; (3) standing or walking for up to four hours out of an eight hour day; (4) occasionally balance, stoop, crouch, kneel, crawl, climb ramps or stairs; (5) never use ladders, ropes or scaffolds; (6) never work at unprotected heights or in close proximity to moving mechanical parts; (7) occasionally operate foot controls on the left, frequently on the right; (8) be able to understand, remember, and carry out three to four step instructions; (9) complete assigned tasks with ordinary supervision; and (10) not be able to tolerate interaction with the public. (AR at 67-68). The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous jobs. (AR at 69).

However, the VE identified three other "light" exertional jobs that someone with those limitations could perform and testified about the number of each of those positions in the regional and national economy: (1) small products assembler (1,404 Colorado; 240,000 National); (2) electronics worker (950 Colorado; 96,000 National); and (3) dealer account investigator (204 Colorado; 27,000 National). (AR at 69-70). The ALJ then posed a second hypothetical in which she asked the VE to assume that the individual would be able to (1) sit for up to 30 minutes, followed by a one to two minute stand and stretch; and (2) walk for up to 15 minutes, followed by sitting for 15 minutes. (AR at 70-71). The VE testified that, under this hypothetical, the dealer account investigator position would be eliminated. (AR at 71). In the third hypothetical, the ALJ added a limitation that the individual would need to stand and stretch after every 15 minutes of sitting without interruption. (AR at 71). Based on these limitations,

the VE eliminated the small products assembler position as well as the electronics worker position.

The VE did testify, however, that a person under those limitations could function as a dispatcher (360 Colorado; 19,500 National)[3], a hand painter and stainer (370 Colorado; 16,000 National), or a surveillance system monitor (220 Colorado; 23,000 National). (AR at 72-73). The ALJ then asked whether any of those positions would be inconsistent with the limitations of lifting and carrying no more than five pounds frequently and 10 pounds occasionally, as well as needing a handheld assistive device. (AR at 73). The VE testified that only the hand painter job would be eliminated. The ALJ then asked the VE to assume that — instead of being able to understand, remember, and carry out three to four step instructions — the individual would be limited to one to two step instructions. (AR at 74). Based upon this additional limitation, the VE eliminated the dispatcher position. (AR at 75). The ALJ then posited an individual who, under the previous limitations, would require a five minute break at least twice a day to compose her emotions. (AR at 75-76). The VE concluded that only the surveillance system monitor position could be compatible with such a limitation. (AR at 76). Finally, the ALJ inquired whether any employment was compatible with an additional limitation of three to four absences per month. (AR at 77). The VE testified that there was no competitive employment compatible with those limitations. (AR at 77).

The ALJ then asked Plaintiff whether there were any additional limitations that the VE should address. (AR at 77). Plaintiff testified that the tear in her rotator cuff limited her ability to tie her shoes and do her hair. She again stated that she had severe carpal tunnel syndrome and arthritis in her shoulder. (AR at77). Based on this additional testimony, the ALJ asked the VE

---

[3] The VE noted that there would be as much as forty percent erosion given the hypothetical limitation on interacting with the public.

whether any employment was compatible with the limitations of (1) lifting and carrying 10 pounds frequently, 20 pounds occasionally; (2) sitting for up to 30 minutes followed by a one to two minute stand and stretch; (3) carrying out one to two step instructions; and (4) reaching with the right arm to full extension frequently but not constantly, and overhead only occasionally. (AR at 78-79). The VE testified that the small products assembler and the electronics worker were viable options. (AR at 79). However, when asked to assume that the individual could only reach to full extension occasionally, the VE eliminated both jobs. (AR at 80).

On July 15, 2011, the ALJ issued her decision denying benefits. (AR at 18-33). The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[4] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since May 25, 2008. (AR at 23). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: morbid obesity, degenerative disc disease of the lumbar and cervical spine, asthma, obstructive sleep apnea, cystic mass associated with empty sella syndrome, right carpal tunnel syndrome, a right shoulder disorder, and a dysthymic disorder. (AR at 23-24). At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. (AR at 24-26).

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to lift and carry up to 10 pounds frequently and 20 pounds occasionally. She can sit for up to 30 minutes uninterrupted,

---

[4] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

>followed by a 1 to 2 [minute] break to stand and stretch, for a total of up to 5 hours of sitting out of an 8-hour workday. She can stand and/or walk for up to 15 minutes uninterrupted, followed by the opportunity to sit for up to 15 minutes, for a combined total of up to 4 hours standing and/or walking out of an 8-hour workday. The claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs, but never climb ladders, ropes or scaffolds. She is not limited in the use of her left, nondominant upper extremity. She can use her right, dominant upper extremity no more than occasionally to reach overhead, and frequently to reach in all directions (with full extension). She can frequently handle and finger using the right upper extremity. The claimant can operate foot controls frequently on the right and occasional [sic] on the left. She cannot work safely at unprotected heights or in close proximity to exposed moving mechanical parts. The claimant remains able to understand and remember simple, 1-to-2-step instructions; sustain attention for 2-hour blocks throughout 8-hour workdays; complete assigned tasks with minimal supervision; and exercise sufficient judgment to make basic work-related decisions. The claimant can adhere to a normal schedule. The claimant remains able to interact appropriately with supervisors and a small number of co-workers (up to 4-5 at a time). She cannot tolerate interactions with the public (including telephonic).

(AR at 26). In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ noted that many of Plaintiff's medical records were inconsistent with her claims regarding the severity of the limitations resulting from her impairments. (AR at 29-30). In addition, the ALJ credited the opinion of Dr. Kimberlee Terry, a state agency consultant, who reviewed Plaintiff's medical records and prepared a physical RFC assessment. (AR at 30). Dr. Terry concluded that Plaintiff's symptoms were not disabling and that Plaintiff was reasonably limited to light level activities. (AR at 112). The ALJ also found Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms "not credible." (AR at 28).

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. (AR at 31). At step five, the ALJ found: "[c]onsidering the

6

claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. Specifically, the ALJ found that Plaintiff could work as a small products assembler or an electronics worker. (AR at 32). Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. (AR at 32). Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff retained counsel, requested review of the ALJ's decision, and submitted 576 pages of additional evidence.[5] (AR at 741-1321). The Appeals Council denied her request for review on June 12, 2013. (AR at 1-5, 15). The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on August 16, 2013. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is

---

[5] Many of the additional documents duplicated evidence that was already before the ALJ. And over 200 pages reflected treatment and diagnoses after the relevant period.

7

more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) the RFC was not supported by substantial evidence; and (2) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. Neither argument is persuasive.

**A.     Whether the RFC was based on substantial evidence**

The RFC is an assessment of what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. An ALJ must make specific RFC findings based on all the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In determining the scope of a claimant's RFC, an ALJ's assessment must "consider all of [a claimant's] medically

determinable impairments . . . , including [her] medically determinable impairments that are not severe." 20 C.F.R. § 404.1545. An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms." 20 C.R.F. § 404.1508.

Here, Plaintiff contends that the ALJ's RFC was not supported by substantial evidence. Specifically, she takes issue with the ALJ's determination that Plaintiff could use her right arm and hand to "frequently reach in all other directions" and "frequently handle and finger." (AR at 26). In support of her contention, Plaintiff argues that the ALJ failed to adequately discuss Plaintiff's forearm swelling, her carpal tunnel syndrome, or her complaints of daytime sleepiness or frequent pain. She also argues that because the ALJ did not include any limitations regarding daytime sleepiness or frequent pain in her hypotheticals, "there is no way to know whether she considered this limitation in her disability determination." (Doc. 15 at 20).

**1. Failure to Explicitly Consider All Medical Evidence**

Plaintiff does little to explain her argument beyond a recitation of the legal standards for fashioning an RFC and determining whether the RFC is supported by substantial evidence. However, as this court understands her primary argument, Plaintiff contends that the ALJ failed to consider her forearm swelling, carpal tunnel syndrome, daytime sleepiness, and frequent pain. The court disagrees.

While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal citation omitted). The ALJ specifically stated that she fashioned the RFC "after careful consideration of the entire record." (AR at 26). The Tenth Circuit has held that where the ALJ's discussion of the evidence and the reasons for her conclusions demonstrate

that she has adequately considered Plaintiff's alleged impairments, the court should take her "at [her] word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009); *see also Flaherty*, 515 F.3d at 1071 (the court should take a lower tribunal at its word when it declares that it has considered a matter). Here, the ALJ's decision contains a detailed discussion of much of the evidence that Plaintiff submitted, a discussion of how the ALJ weighed the evidence, and a thorough account of how the ALJ arrived at her conclusion. Thus, the court takes the ALJ at her word that she considered all of the evidence, even those records that were not explicitly discussed. Any failure to discuss Plaintiff's various ailments to the extent Plaintiff deems necessary was not error.

Moreover, although Plaintiff enumerates the medical ailments that the ALJ allegedly failed to discuss, and provides a bare list of record citations, she does not explain how these ailments have any bearing on her functional limitations such that the ALJ — in setting the RFC — should have discussed them in greater detail. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (stating that a medical condition need not be considered where the claimant has failed to identify resulting functional limitations that would affect the ALJ's analysis); *see, e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (stating that the "mere presence" of a medical condition is not enough; rather, that condition, "alone or in combination with other impairments, must render [the] claimant unable to engage in any substantial employment" (brackets and internal quotations marks omitted)). Thus, Plaintiff has not established any error in the ALJ's failure to discuss these alleged conditions.

### 2. Frequent Pain and Daytime Sleepiness

Plaintiff also seems to contend that the ALJ erred in failing to include a limitation related to frequent pain or daytime sleepiness. Again, Plaintiff's argument is not fully developed, and apart from a string of record citations, Plaintiff has done little to substantiate this contention.

However, because "[e]vidence is not substantial if it is overwhelmed by other evidence in the record," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005), the court construes this argument as a contention that overwhelming evidence demonstrated that the ALJ should have included limitations of frequent pain and daytime sleepiness in the RFC. This argument is not well taken.

As to her complaints of frequent pain, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible" to the extent that they were inconsistent with the RFC. (AR at 28). "'To be disabling, pain must be so severe, by itself of in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted). To determine whether pain is disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In this case, the ALJ considered the entire record and concluded that Plaintiff's complaints regarding the severity of her symptoms were not credible. (AR at 28). In reaching this conclusion, the ALJ noted a number of inconsistencies between Plaintiff's subjective complaints and her medical records. For example, although Plaintiff reported that she had two

herniated discs in her back, an MRI only showed "minimal disc bulging" at one level of her lumbar spine. (*Compare* AR at 346 *with* AR at 393). In addition, Plaintiff's medical records specifically state that she had "[n]o extruded disc herniation or central canal stenosis." (AR at 393). And a March 2011 examination actually noted full range of motion of the cervical spine, and full range of motion in the lumbar spine with only mild low back pain. (AR at 440). The ALJ also noted that despite complaints of pain in her right shoulder and hand, Plaintiff exhibited normal finger tapping, alternating hand flapping, and hand rolling. (AR at 414). And a November 2010 MRI of Plaintiff's shoulder was normal. (AR at 443). Furthermore, despite her allegations of pain, in 2011, Plaintiff was apparently able to work 10 hours a day, seven days a week, as a tax preparer. (*See* AR at 1098).

In addition, the ALJ credited Dr. Terry's opinion regarding Plaintiff's credibility. (AR at 30). Dr. Terry opined that Plaintiff was only partially credible with regard to her statements about the severity of her symptoms. (AR at 92). Dr. Terry noted that although Plaintiff described a high degree of pain, it was not supported by her medical records. (AR at 92). Ultimately, Dr. Terry concluded that Plaintiff had abilities consistent with light work, with no manipulative limitations. (*See* AR at 92-94). The ALJ gave significant weight to Dr. Terry's opinions because they were consistent with Plaintiff's medical records. (AR at 30).

On appeal, Plaintiff provides several citations to her medical records to support her claim of disabling pain. (*See* Doc. 15 at 19). None of these records, however, contain any medical opinions from a treating physician that Plaintiff's pain was disabling. Rather, each record citation is based on Plaintiff's subjective complaints of pain. (AR at 413, 546, 542-43). Furthermore, the ALJ did credit Plaintiff's pain by limiting her to frequent reaching, handling, and fingering with her right hand and arm, as opposed to constantly, and only occasional use of her right arm and

hand to reach overhead. (AR at 26). In essence, Plaintiff's argument is a request for this court to reweigh the evidence, which it cannot do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Therefore, the court concludes that the ALJ did not err in excluding a limitation based upon frequent pain, and that the ALJ's RFC assessment regarding Plaintiff's ability to "frequently" reach in all directions was sufficiently supported by substantial evidence.

With regard to Plaintiff's complaints of daytime sleepiness, she cites this court to three separate sleep consultation appointments. (*See* Doc. 15 at 19). During the first consultation on March 5, 2010, which the ALJ specifically discussed (AR at 29), the physician noted that Plaintiff had symptomatic improvement with the use of a CPAP machine. (AR at 888-89). Indeed, at the second consultation on July 15, 2011, Plaintiff reported that her daytime sleepiness had actually resolved with the use of CPAP therapy. (AR at 879). At a third appointment on October 10, 2012, which falls outside the relevant period, Plaintiff reported that her daytime sleepiness had returned; however, the physician believed this could have been caused by the wrong settings on the CPAP machine. (AR at 854-55). The physician referred Plaintiff for a CPAP titration study to reassess her CPAP and oxygen needs. (AR at 856). On appeal, Plaintiff has not pointed to any record evidence demonstrating that the reoccurrence of her daytime sleepiness was more than temporary, and she bears the burden of proving that she has a disability. *Wall*, 561 F.3d at 1062. This evidence, alone, is not overwhelming such that the ALJ should have included a limitation in the RFC. Consequently, a different outcome is not required: the ALJ's determination remains supported by substantial evidence.

**B.      Sufficient jobs in the national economy that Plaintiff can perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs

existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 31).

Plaintiff argues that this finding is not supported by substantial evidence. The court disagrees. At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the physical aspects of the RFC ultimately adopted by the ALJ. (AR at 67-77; 78-80). The VE testified that someone with those restrictions could work as a small products assembler or an electronics worker. (AR at 75).

Plaintiff contends that the hypothetical posed by the ALJ was erroneous. (Doc. 15 at 20-21). However, as discussed above, the court has concluded that the RFC was based on and supported by substantial evidence. Because the hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ did not err in posing its hypothetical.

Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the national economy that Plaintiff could perform — is supported by substantial evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Amaya was not disabled within the meaning of Titles II and XVI of the Social Security Act and therefore not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's

final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 26th day of March, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge

15